## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

THOMAS GORDON
3135 Sun Valley Drive
Pickerton, Ohio 43147

     Plaintiff,

vs.

FAIRFIELD COUNTY COURT OF
COMMON PLEAS
224 East Main Street, Room 202 & 203
Lancaster, Ohio 43130,

And

FAIRFIELD COUNTY COMMISSIONERS
210 East Main Street, Room 301
Lancaster, Ohio 43130,

And

FAIRFIELD COUNTY
c/o Aundrea Cordle, County Administrator
210 East Main Street
Lancaster, Ohio 43130

And

FAIRFIELD COUNTY SHERIFF
345 Lincoln Avenue
Lancaster, Ohio 43130

     Defendants.

**JURY DEMAND
ENDORSED HEREON**

## COMPLAINT FOR DAMAGES, INJUNCTIVE, AND EQUITABLE RELIEF
## DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff THOMAS S. GORDON, by and through undersigned counsel,

and sues Defendants FAIRFIELD COUNTY, FAIRFIELD COUNTY BOARD OF

COMMISSIONERS, AND FAIRFIELD COUNTY COURT OF COMMON PLEAS as follows:

## JURISDICTION AND VENUE

1.     This is an action for declaratory, injunctive and compensatory relief pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131, *et seq.* ("ADA"), and its implementing regulation, 28 C.F.R. Part 35, as well as § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 794, *et seq.* ("Rehabilitation Act"); the Equal Protection Clause to the United States Constitution pursuant to 42 U.S.C. § 1983; and the due process clause of the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983, and 28 U.S.C. § 1343.

3.     Pursuant to pendant jurisdiction, attendant and related causes of action, arising from the same  nucleus of operative facts and arising out of the same transactions, are also brought under parallel Ohio law, whose goals are closely tied with the ADA, including but not limited to violations of Ohio Revised Code Section 4112.01(A)(13) *et seq.*

4.     Further, venue is proper in this judicial district in accordance with 28 U.S.C. § 1391(b) and (c), as Plaintiff and all Defendants either reside in this district or have their principal place of business in this district, and all events giving rise to Plaintiff's claims occurred within this district.

## PARTIES

### I.     Plaintiff Thomas Gordon

5.     Plaintiff Thomas Gordon ("Plaintiff" or "Mr. Gordon") is a citizen of the United States who resides in Fairfield County, Ohio.

6.     At all relevant times, Mr. Gordon was a "qualified individual" with a disability as defined by 42 U.S.C. §12111(8) of the ADA.

7.     Mr. Gordon is an attorney and his practice entails having to enter the Fairfield County Court of Common Pleas as part of his attorney practice, and entails having to perform Guardian Ad Litem duties which include visiting the homes of his clients.

8.     At all relevant times, Mr. Gordon was a "qualified individual" with a disability as defined by as defined by 42 U.S.C. §12111(8) of the ADA.

**II.     Defendant Fairfield County Board of Commissioners**

9.     Defendant Fairfield County Board of Commissioners, is a governmental entity that may be sued who manages and oversees the programs of Fairfield County, Ohio and provides funding to the Fairfield County Common Pleas Court and the Fairfield County Sheriff.

10.     The Fairfield County Board of Commissioners is a recipient of federal financial assistance.

11.     The Fairfield County Board of Commissioners is subject to the ADA and the Rehabilitation Act.

12.     The Fairfield County Board of Commissioners is a state actor and at all relevant times, acted under color of state law.

**III.     Defendant Fairfield County**

13.     Defendant Fairfield County, Ohio, is a charter-form of government operating under its own county charter and subject to Title 3 of the Ohio Revised Code.

14.     Defendant Fairfield County is a governmental entity that may be sued who manages and oversees the programs of Fairfield County, Ohio and provides funding to the Fairfield County Common Pleas Court and the Fairfield County Sheriff.

15.     Fairfield County is a recipient of federal financial assistance.

16.     Fairfield County is subject to the ADA and the Rehabilitation Act.

17.     Fairfield County is a state actor and at all relevant times, acted under color of state law.

**IV.     Defendant Fairfield County Court of Common Pleas**

18.     Fairfield County Court of Common Pleas is a governmental arm of the State of Ohio, part of the Ohio state court system, established by the Ohio state legislature, and subject to the supervision of the Ohio Supreme Court.

19.     The Fairfield Court of Common Pleas is not a segment of county government but an arm of the state.

20.     The Fairfield County Court of Common Pleas is funded in part by the treasury of the County of Fairfield, the treasury of the State of Ohio and funding from the Federal Government.

21.     The Fairfield Court of Common Pleas is a public entity as defined by the Americans with Disability Act,

22.     The Fairfield Court of Common Pleas is an instrumentality of the State and is a state actor and at all relevant times, acted under color of state law,

**V.     Defendant Fairfield County Sheriff**

23.     Defendant Fairfield County Sheriff is a public entity subject to suit under Title II of the ADA.

4

24. At all relevant times, Defendant Fairfield County Sheriff was run by Alex Lape, as the elected position of Sheriff of Fairfield County, Ohio.

25. Defendant Fairfield County Sheriff is responsible for the security of the Court.

26. Defendant Fairfield County Sheriff engaged directly in the discrimination and retaliation against Mr. Gordon and participated in concert with the other Defendants to violate Mr. Gordon's rights as alleged herein.

27. Fairfield County Sheriff is a state actor and at all relevant times, acted under color of state law

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### I. Mr. Gordon and his Service Animal

28. Since 2008, Mr. Gordon has had Epilepsy, which results in seizures.

29. In order to manage the seizures, Mr. Gordon has a Service Animal ("Xena"), that assists him in stopping the seizures through stimulation, and provides comfort to Mr. Gordon until the seizure passes. When Mr. Gordon comes out of a seizure, he is groggy and disoriented.

30. Mr. Gordon's Service Animal accompanied him at all times when he was attending hearings and other legal matters at the Court.

31. Mr. Gordon's Service Animal accompanied him at all times when he was conducting Guardian Ad Litem appointed attorney work outside of the Court, for example in the homes of the clients.

### II. Mr. Gordon is Barred from entering the Court

32. On or about May of 2023, Mr. Gordon attempted to enter the Fairfield County Court of Common Pleas to attend a hearing in the Juvenile Division of the Court.

33.     Defendant Fairfield County Sheriff deputies who were working at the Court entrance refused to allow Mr. Gordon's Service Animal to accompany him past the security checkpoint.

34.     Gordon informed the Sheriff deputies that they were not allowed to violate the ADA, and that this dog was a Service Animal.

35.     The Sheriff deputies continued to take the position that the Service Animal was not permitted inside the Court, past the security area.

36.     Due to having to enter the Court for the hearing, after passing through the metal detector at the security checkpoint with his Service Animal, Mr. Gordon spotted a colleague who knew both him and his Service Animal, and Mr. Gordon then gave his colleague the Service Animal.

37.     The next day, Mr. Gordon attempted to enter the Court for another hearing.

38.     This time, the Sheriff deputies told Mr. Gordon that his Service Animal would only be permitted to enter the Court if the Service Animal was muzzled.

39.     The Sheriff deputies told Mr. Gordon that this was a directive from Administrative Judge Richard Berens.

40.     Judge Berens engaged directly in the discrimination and retaliation against Mr. Gordon and participated in concert with the other Defendants to violate Mr. Gordon's rights as alleged herein.

41.     Judge Berens acted under color of law in the acts and omissions described herein.

42.     If his Service Animal was muzzled, it would prevent the Service Animal from doing its job.

43.     With no one available to hand his Service Animal off to this time while he attended the hearing, he was forced to attend the hearing via telephone in the security area of the Court.

**III.    Written opinion placed on shelf at security desk**

44.     Roughly three to four weeks after the Fairfield County Sheriff barred Mr. Gordon from the Court, Mr. Gordon saw a document that looked like a letter from Prosecutor Witt to Defendant Judge Berens regarding admission of service animals into the Court.

45.     While Mr. Gordon was at the security area he saw a copy of a letter that was from Prosecutor Witt to Judge Berens.

46.     The Letter stated that Judge Berens has the authority to order the Service Animal to be muzzled inside the Court, without violating the ADA.

47.     Multiple copies of this Letter were placed on a shelf at the security entrance to the Court, and was placed in such a manner for everyone to view.

48.     The Letter stated that Prosecutor Witt was giving an opinion regarding Judge Berens's question about the Court having to let people with Service Animals into the Court.

49.     The Letter referenced the ADA specifically, and advised Judge Berens only two questions may be asked of the handler.  Is the dog a service dog used for a disability, and what does it do?

50.     The Letter also gave his office's opinion on when an owner and/or dog could be asked to leave the Court.

51.     The document appeared to be in the form of a letter and stated something to the effect of "Dear Judge Berens:  You recently asked for my legal opinion regarding whether or not a service dog could be kept out of the Court, and relayed the dog incident during the GAL visit, and stated that his office had conducted research, and concluded with his opinion that the service dog could be barred from the Court.

52.     Although Mr. Gordon's name was not mentioned in the Letter, every attorney or person who worked in the juvenile court section who looked at it would know that it referred to Mr. Gordon and his Service Animal.

53.     It was very humiliating for Mr. Gordon to have this Letter available for his colleagues, and everyone else to see.

54.     These experiences, caused by Defendants, inflicted significant humiliation upon Mr. Gordon, who had been a practicing attorney in the Court for 18 years.

55.     After a few days, Mr. Gordon noticed that all of the copies of the Opinion were gone.

**IV.     Mr. Gordon enters the Court with his Service Animal Muzzled**

56.     Thereafter, Mr. Gordon purchased a muzzle, and muzzled his Service Animal when he entered the Court.

57.     Mr. Gordon also kept his Service Animal muzzled inside the Court for a period of time, while he was in the hallways and during hearings.

58.     The muzzling of Mr. Gordon's Service Animal prevented her from performing the required tasks in the event a seizure occurred.

59.     Being muzzled, the Service Animal could no longer stimulate Mr. Gordon's face when he felt a seizure coming on, or during a seizure.

60.     Additionally, being muzzled prevented his Service Animal from stimulating Mr. Gordon's face post seizure, in order to help him come out of it.

61.     When Mr. Gordon's Service Animal was forced to wear the muzzle, it had difficulty breathing because the muzzle had to be tightly secured around her jaw in order to keep its mouth tightly shut.

62.     The muzzle was also very dangerous for the Service Animal, as muzzles are not intended to be on dogs for extended periods of time, as they can vomit and aspirate.

63.     Initially Mr. Gordon muzzled his Service Animal in the hall outside of Juvenile Division, when he was waiting for hearings because he was afraid Judge Berens would see the Service Animal without muzzle.

64.     It was a few weeks after Mr. Gordon first muzzled his Service Animal in the Court, that Mr. Gordon made the decision that he would be removing himself from the court appointment list soon, but he had not let Judge Vandervoort yet know that.

65.     He then, during attendance at hearings in Court, began to remove the muzzle from his Service Animal's face, and let it hang below her chin.

66.     Mr. Gordon was afraid that if Judge Vandervoort or the other judges saw his Service Animal unmuzzled, they would tell Judge Berens, and come up to the third floor and kick Mr. Gordon out of the Court.

67.     However, Judge Berens' courtroom was on the second floor, and Mr. Gordon had never seen him on the third floor.

68.     Mr. Gordon figured that since he was getting ready to let them Judge Vandervoort know that he would not be working in her Juvenile Division in the future, that if Judge Berens saw him, the worst that could happen would be for him to be removed from the Court.

69.     Mr. Gordon's Service Animal was unmuzzled all the while his clients were seated next to him and next to his Service Animal.

70.     Judge Vandervoort and Magistrates Edgar and Sitzman on approximately twenty occasions, saw Mr. Gordon unbuckle the Service Animal's muzzle during these hearings, or they saw the Service Animal without the muzzle around her jaws.

71.     However, when Mr. Gordon would pass through security or leave the Court, he would have her muzzled.

72.     From May 2023 to August 2023, the Service Animal was allowed into the Court only if muzzled.

73.     In August of 2023 the Court imposed further restrictions on Mr. Gordon and his Service Animal.

## V.     Mr. Gordon is Barred from being a GAL

### A.  Background on January 2023 GAL Incident

74.     In 2022, Mr. Gordon was appointed guardian ad litem for two minor children.

75.     In January of 2023 Mr. Gordon conducted a home visit with his Service Animal at the children's grandmother's home, where the children were placed.

76.     During the home visit, the children's grandmother held a small dog that displayed aggression toward Mr. Gordon and his Service Animal.

77.     Mr. Gordon asked the grandmother several times to please put the animal away, but she refused.

78.     At one point, Mr. Gordon was sitting on a couch, with his Service Animal lying at his feet, facing the grandmother and the grandmother's aggressive dog was sitting on a couch to his right, and Mr. Gordon had to turn his head to the right about forty-five degrees to look at the grandmother.

79.     The two children that Mr. Gordon was guardian ad litem for were petting the Service Animal's hind quarters.

80.     A third child whom Mr. Gordon was previously a guardian ad litem for was kneeling next to the Service Animal and petting her.

81.    At that point the small dog lunged toward Mr. Gordon's Service Animal  prompting his Service Animal to stand up and retreat, as his Service Animal has been trained to avoid conflict with other dogs and humans

82.    The third child, who had been petting the Service Animal and was kneeling, tipped over when Mr. Gordon's Service Animal stood up and retreated.

83.    The grandmother screamed that Mr. Gordon's Service Animal bit the child.

84.    Mr. Gordon's Service Animal did not bite the child, instead the Service Animal retreated immediately.

85.    There were no teeth marks, puncture wounds, or scratches indicative of a bite on the child, and Mr. Gordon was present the entire time.

86.    Mr. Gordon denies that the child was harmed by his Service Animal.

87.    The minor child's grandmother sometime thereafter made a complaint to Fairfield County Children Services.

### B.  Judge Vandervoort Places Conditions on Mr. Gordon

88.    On August 25, 2023, Mr. Gordon received a letter from Juvenile Judge Terre Vandervoort, informing him that "[b]ased on the information presented it is unclear what exactly occurred that day at the home visit with any certainty."

89.    The letter also stated that the Court was "concerned regarding the allegation that you failed to maintain control of your dog while on a home visit in your role as Guardian ad Litem" (GAL).

90.    According to Judge Vandervoort, because "there is now a documented incident with the dog, the Court is requesting that the dog not be taken to any more home visits unless you comply with certain conditions "effective immediately".

    a. Provide proof that the dog is covered under [Mr. Gordon's] homeowner's insurance policy[;]

    b. Provide proof that Fairfield County has been named as additional insured on that insurance policy;

    c. The dog must be muzzled anytime taken into a home for a visit[;]

    d. The dog must be muzzled the entire time it is in the Hall of Justice.

91.    On August 26, 2023, Mr. Gordon responded to Judge Vandervoort's inquiries, informing her that his Service Animal assists with stopping the epileptic seizures by stimulating his face, and that a muzzle prevents her from assisting him as a service dog when he has seizures.

92.    In that response to Judge Vandervoot, Mr. Gordon asked the court to remove him from the court appointed list, as he could not muzzle his Service Animal for his own safety.

93.    Judge Vandervoort.is the administrative judge for the Fairfield County Court of Common Please, Juvenile and Probate Divisions.

94.    Mr. Gordon could not attend any visits between parents and their kids if the visits were supervised at children services, unless he muzzled his Service Animal.

95.    It is critical that GALs see visits between the kids and the parents, but Mr. Gordon only visited families a few times thereafter at Children Services after being told to muzzle the dog.

96.    Mr. Gordon muzzled his Service Animal a few times during Children Services supervised visits, but then stopped visiting children and their parents at CPS due to having to muzzle her. When children are removed from their parents, CPS must first look for placement with other family members and/or family friends. If none are found, the kids go into foster care. Regardless, sometimes the allegations against parents are so serious that visits must be supervised at CPS. The parents are put into a room with the kids, and attorneys and case workers.

97.    Judge Richard Berens is one of the Administrative Judges at the Fairfield County Court of Common Pleas.

98.     Judge Berens is the policymaker for the Court and the Courtrooms for the General Division of the Court.

99.     Judge Berens is a final policy maker and decision maker for Fairfield County Court of Common Pleas, General Division, with regard to his acts and conduct alleged herein.

100.    Judge Berens has responsibility for the ADA policies and accommodation process for the Fairfield County Court of Common Pleas, General Division.

101.    Judge Berens engaged directly in the discrimination and retaliation against Mr. Gordon and participated in concert with the other Defendants to violate Mr. Gordon's rights as alleged herein.  Judge Berens acted under color of law in the acts and omissions described herein.

**VI.     Judge Vandervoot did not Remove Mr. Gordon from Court Appointed GAL list**

102.    Despite requesting to be removed from the court appointed list, the Court failed to do so.

103.    Mr. Gordon was forced to remain on cases as a *Guardian Ad Litem*, even though he could not complete his duties because of the restrictions related to his Service Animal.

104.    As long as Mr. Gordon was on a case, he had to prepare a GAL report prior to each hearing.  So, until the judge or magistrates formally declared that he was going to be replaced, he still had to do an investigation and report.  For example, let's assume a hearing was set for March 1.  Unless he received verification prior to that hearing indicating that he had been replaced, which never happened in any case he was appointed on-he was required to not only submit his report, but to also show up at the hearing.

105.    The inability for Mr. Gordon to complete his duties, as required by the Supreme Court of Ohio's Rules of Superintendence, jeopardized his law license.

106.    As a GAL, Mr. Gordon is required to make a recommendation to the Court as to what he feels is in the best interest of the child.

107.    To do this, Rule 48 of the Rules of Superintendence require all GALS to see the child with the parent, with the caregiver, see the homes of each, go to the school of the child, and many other things.  If Mr. Gordon made a recommendation without having conducted a full investigation, it would be deemed reversable error on appeal if the case went to trial.  Therefore, this could jeopardize Mr. Gordon's law license.  There was one attorney who was removed from the court appointed GAL list in Columbus because he made a recommendation after only seeing the child once in three years.

108.    In hearings which Mr. Gordon had to attend in person with his Service Animal, the judiciary made it a point to make it part of the record that Mr. Gordon was going to be replaced as a GAL, which was not only unnecessary, but extremely humiliating to Mr. Gordon.

109.    Mr. Gordon had great concerns and stress about how he would be able to perform his duties unless he complied with the restrictions related to his service dog.

110.    He had stress and fear that a disciplinary complaint would be filed against him.

111.    Defendants later removed Mr. Gordon from court-appointed cases without informing him.

112.    In one instance, he found out that he was no longer on a case from the attorney who replaced him.

113.    In another case, the magistrate stated on the record, without him present, or receiving any notice, that he had been replaced.

114.    In another case, Mr. Gordon had prepared and cleared his day for an all-day trial, only to find out four days before trial that he was no longer on the case.

115.    In another case, Mr. Gordon found out that he had been removed from a case by looking at the case docket that was sent one day before he was scheduled to attend a hearing.  His name

was not listed as one of the parties. Therefore, he had been replaced as GAL. If he had not checked the docket, he would have spent two hours on a report that he would not have been paid for, and would have made a 45-minute drive, one way, to go to court.

116. Mr. Gordon was never given notice that he was removed from any case prior to a hearing by either the judiciary, orally, in writing, or via email. Neither was he informed by the clerk's office that he had been removed.

117. So, when Mr. Gordon had prescheduled cases, even if he had been removed without his knowledge, he still had to go to Court, or risk a possible complaint from the Court for not attending a hearing.

118. There were a few times that Mr. Gordon called the clerk's office, to see if he had been replaced on cases. Although he had been replaced, that was not reflected in the court file, so the clerk's office said that their records showed he was still on the case. Therefore, he went to court under the assumption he was still on a case, when he was not.

119. In two other cases, Mr. Gordon found out he was removed by reviewing the court docket.

## VII.    Reasonable Accommodation Request Denied

120. On September 22, 2023, Attorneys Richard Rosenthal and Michela Huth, on Mr. Gordon's behalf, sent a letter to the following persons at the Fairfield County Court of Common Pleas: Magistrate Joshua Horacek, Court Administrator General Division;, Michael Orlando, Court Administrator Juvenile Division;, Judge Terre L. Vandervoort, Magistrate Michelle Edgar, Judge Richard Berens, Judge David Trimmer, and Sheriff Alex Lape Fairfield County.

121. This communication informed the above recipients that the restrictions imposed upon Mr. Gordon by Judge Vandervoort in her August 25, 2023 letter to Mr. Gordon violated the ADA and that this prevented Mr. Gordon from being able to work as a GAL.

122.    The letter demanded the retraction of all restrictions imposed upon Mr. Gordon.

123.    On September 29, 2023, Attorneys Huth and Rosenthal received a response from the Fairfield County Prosecutor, R. Kyle Witt, informing them that Mr. Gordon would be permitted to return to the Court with his service dog as long as the dog wore a muzzle.

124.    The letter also indicated that if, "Gordon desires to return to the court-appointed list as a Guardian ad Litem, he must provide proof that his dog is insured and that the County is named as an additional insured on his policy."

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### ADA Title II
### Failure to Accommodate

125.    Each of the preceding paragraphs is hereby incorporated by reference as if fully set forth.

126.    Title II of the Americans with Disabilities Act and the corresponding Federal Regulations defines an individual with a disability as any individual who has a physical or mental impairment that substantially limits one or more major life activity, has a record of such an impairment, or is regarded as having such an impairment. A major life activity includes hearing.

127.    Title II of the ADA prohibits public entities, which includes instrumentalities of state and local governments, such as Courts, from discriminating against qualified individuals with disabilities. *See* 29 U.S.C. §§ 701 et seq., 42 U.S.C. § 12132; 42 U.S.C. § 12131(1)(B).

128.    ADA Title II was intended to mandate reasonable modifications to existing policies and to otherwise reasonably accommodate individuals with disabilities. *See* 42 U.S.C. §12101(a)(5).

129.    ADA Title II provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity. *Tennessee v. Lane*, 541 U.S. 509, 517 (2004).

130.     Public entities are required to make reasonable modifications to their policies, practices, or procedures to avoid discrimination. *See* Americans with Disabilities Act Title II Technical Assistance Manual, § II-3.6100, available at http://www.ada.gov/taman2.html.

131.     The ADA's definition of discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A).

132.     A finding of a failure to accommodate requires a finding that the plaintiff was "denied the benefits" or otherwise discriminated against by the public entity. *Id*. at 304.

133.     To state a failure to accommodate claim under ADA Title II, a plaintiff must show: (1) he is a qualified individual with a disability; (2) he was "either excluded from participation in or denied the benefits of some public entity's services, programs, or activities;" (3) such exclusion or denial was by reason of his disability; and (4) the defendants knew he was disabled and required an accommodation.

134.     Plaintiff Gordon is disabled as defined under Title II of The Americans with Disabilities Act and the corresponding Federal Regulations, 29 C.F.R. Section 35.104.

135.     Plaintiff Gordon has a disability that substantially limits one or more major life activities.

136.     Plaintiff Gordon Plaintiff has a disability, a record of disability, and is perceived to have a physical disability in that he has been diagnosed with epilepsy and seizures which substantially limits one or more life activity.

137.     Plaintiff Gordon was and is a "qualified individual with a disability" as defined by 42 U.S.C. § 12132(2) because since 2008, he has had Epilepsy, which results in seizures, which impacts his ability to work, read, sleep, and do other everyday things.

138.     Defendants, as public entities, were required to provide an opportunity for Plaintiff Gordon to be able to participate equally as an attorney in the Court, and to avoid a denial of due process and equal protections in matters involving complaints related to GAL attorney duties.

139.     The conduct of the Defendant in failing to reasonably accommodate Plaintiff Gordon and in denying him due process, on the basis of his disability and his request for accommodation, are in violation of Title II of the American with Disabilities Act, 42 U.S.C. Section 12131, *et seq.*

140.     The ultimate responsibility for ensuring that an individual with a disability is able to access the Court rests with the public entity, in this case Defendants.

141.     Instead of accommodating Plaintiff Gordon's disability as required by the law, Defendants continued to impose the restrictions upon him.

142.     Defendants failed to accommodate Plaintiff Gordon's disability.

143.     Plaintiff Gordon was told by Defendant County, Judge Vandervoot, Judge Berens, the Sheriff, and Prosecutor Witt that he could not enter the Court with his Service Animal.

144.     Subsequent to being banned from the Court, Plaintiff Gordon was then told that he could enter the Court only under certain conditions, such as his Service Animal being required to be muzzled and that he obtain dog insurance covering the County on his policy.

145.     Plaintiff Gordon then sought a reasonable accommodation from Defendants – that being to be permitted to have his Service Animal accompany him while he entered and was present in the Court for attorney work.

146.     This reasonable accommodation request was denied

147.    If a service animal is excluded, the individual with a disability must still be offered the opportunity to obtain goods, services, and accommodations without having the service animal on the premises.

148.    Plaintiff Godon would have been able to perform the essential functions of his position with an accommodation.

149.    With his Service Animal Plaintiff Gordon was able to perform the essential functions of an attorney in the Court and in the GAL work.

150.    This never happened, instead Plaintiff Gordon was never offered an opportunity to obtain the services he need to access to perform his attorney work.

151.    Plaintiff Gordon was denied the equal opportunity to benefit from all of the programs, services, and activities.

152.    Judges Berens and Vandervoort, acting in their official capacity, fits the definition of "a public entity" for purposes of Title II because they are state court judges who were acting in their official capacity when they denied him reasonable accommodation, and forced his Service Animal to be muzzled, and required Plaintiff Gordon to obtain liability insurance to cover the county.

153.    Prosecutor Witt acted as "the People" – also a "public entity."

154.    Prosecutor Witt, acting in his official capacity, fits the definition of "a public entity" for purposes of Title II because he is a county prosecutor who was acting in his official capacity when he denied Mr. Gordon's request for reasonable accommodation.

155.    When Prosecutor Witt acted in his official capacity, as he did when he acted toward Plaintiff Gordon, the law is clear that he was acting as the state's judicial branch of government. *Laidley,* 914 F.2d at 1392; 42 U.S.C. § 12131(1)(A).

156.    When Prosecutor Witt acted in his official capacity, as he did when he acted toward Plaintiff Gordon, the law is clear that he was acting as the state's judicial branch of government. *Laidley,* 914 F.2d at 1392; 42 U.S.C. § 12131(1)(A).

157.    Defendants' acts and omissions are in violation of the equal access and nondiscrimination requirements set forth in Title III of the ADA and the regulations promulgated thereunder and have resulted in injury to Mr. Gordon.

158.    By engaging in the conduct described above, Defendants are liable for discriminating against Plaintiff Gordon.

159.    Plaintiff Gordon has been damaged by the acts of Defendants in not reasonably accommodating his disabilities.

160.    To recover compensatory damages under Title II of the ADA, courts generally require a showing of intentional discrimination.

161.    Plaintiff Gordon can establish "intentional discrimination" in this case by presenting evidence that (1) Defendants' conduct was fueled by discriminatory animus, or that (2) Defendants acted with "deliberate indifference to the strong likelihood that pursuit of its questioned actions would likely result in a violation of federally protected rights."

162.    When Defendants used their official capacities to deny Ms. Gordon access to the Court unless he muzzles his dogs and follows their other demanded conditions, they knew or should have known that he would lose his ability to access the courts.

163.    Plaintiff Gordon was discriminated in violation of Title II of the ADA by virtue of the Defendant's refusal of the Defendants to accommodate his disability

164.    This discriminatory conduct of the Defendant has resulted in a denial of Plaintiff's access to the Court and ability to perform the GAL duties, without due process.

165.     Defendant's actions interfered with Plaintiff Gordon's ability to work with accommodations as is protected by the ADA.

166.     The exclusion, denial of benefits, or discrimination by Defendants against Plaintiff Gordon was by reason of his disability.

167.     Defendants' conduct was done in intentional or reckless disregard of his statutorily and constitutionally protected rights.

168.      The actions of Defendant as perpetrated by their agents, in failing to accommodate Plaintiff Gordon has caused him great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

169.     Due to the unlawful discriminatory conduct of Defendants, Plaintiff is also entitled to reasonable attorneys' fees.

170.     This Court has the authority to grant the Plaintiff's request for injunctive relief under the ADA, including an Order to alter the programs to make them readily accessible to and usable by disabled persons, to require the provision of an auxiliary aid or service, to modify a policy, or provision of alternative methods to the extent required by the Act. 28 C.F.R. 36.501.

### SECOND CAUSE OF ACTION
### Section 504 of the Rehabilitation Act
### Failure to Accommodate

171.     Each of the preceding paragraphs is hereby incorporated by reference as if fully set forth.

172.     Section 504 of the Federal Rehabilitation Act (29 U.S.C. §794) and the corresponding Federal Regulations defines an individual with a disability as any individual, who has a physical or mental impairment that substantially limits one or more major life activity, has a record of such impairment, or is regarded as having such impairment.

173.     A major life activity includes the ability to perform attorney duties in and outside of the Court.

174.    Plaintiff Gordon is disabled as defined under the Rehabilitation Act.

175.    The Fairfield County Court of Common Pleas was required as a public entity, receiving federal funding, to (1) provide appropriate services to Plaintiff Gordon in order to afford him an opportunity to participate equally in the proceedings pending before the court and in performing his GAL duties outside of the Court; (2) to avoid denying him equal access to the Court system; (3) to avoid discrimination against him on the basis of his disability and (4) to provide Plaintiff Gordon with due process under the laws.

176.    The ultimate responsibility for ensuring that an individual with a disability receives necessary services rests with the public entity, in this case the Court

177.    The Rehabilitation Act provides a remedy to any person aggrieved by virtue of the discriminatory conduct of the recipient of federal funding as it relates to the services provided by that public entity.

178.    Plaintiff Gordon was aggrieved and suffered damage by virtue of the Defendant's discriminatory conduct, specifically he was denied the right to access the Court and to perform his attorney GAL duties.

179.    The Defendant conduct was done in intentional or reckless disregard of Plaintiff Gordon's statutorily protected rights and constitutional rights

### THIRD CAUSE OF ACTION
### Fourteenth Amendment - Due Process
### 42 U.S.C. § 1983

180. Each of the preceding paragraphs is hereby incorporated by reference as if fully set forth.

181. Under the Fourteenth Amendment due process clause, state actors may not "deprive any person of [] property, without due process of law." U.S. Const. amend. XIV.

182. Plaintiff Gordon has a due process right secured by the Fourteenth Amendments to the United States Constitution, the Ohio Constitution and the Civil Rights Act, 42 U.S.C. Section 1983, et seq.

183. Plaintiff Gordon has a cognizable property or liberty interest in being able to access the Court and perform his Attorney work and related GAL duties both in the Court and outside of the Court, which is secured by the constitutions and statutes.

184. The Defendants, as state actors and acting under color of state law, deprived the Plaintiffs of a right secured by the Constitution of the United States, namely the Fourteenth Amendment right to due process.

185. At no time, relevant to this Complaint, did Defendants provide Plaintiff Gordon with an opportunity to contest, in a meaningful time and manner, the decisions of the Defendants in imposing conditions and barring him from the Court.

186. Defendants deprived Plaintiff Gordon of life, liberty, or property, without due process.

187. Judge Vandervoort violated Mr. Gordon's due process rights by barring him from performing GAL duties, without affording him an opportunity to contest the deprivation in a meaningful time and manner.

188.    Judge Vandervoort violated Mr. Gordon's due process rights by barring him from the Court unless he abided by the conditions, such as muzzling, without an opportunity to contest the deprivation in a meaningful time and manner.

189.    Judge Berens violated Mr. Gordon's due process rights by barring him from the Court, without affording him an opportunity to contest the deprivation in a meaningful time and manner.

190.    In the event Defendants place the blame on Sheriff Lape for barring Mr. Gordon from the Court, then Sheriff Lape violated Mr. Gordon's due process rights by barring him from the Court, without affording him an opportunity to contest the deprivation in a meaningful time and manner.

191.    In the event Defendants place the blame on Sheriff Lape for barring Mr. Gordon from the Court, then Defendant Fairfield County Sheriff Alex Lape was at all relevant times hereto the final decision maker and policy maker in the Sheriff's Office.

192.    In the event Defendants place the blame on Sheriff Lape for barring Mr. Gordon from the Court, then Sheriff Lape has the ultimate decision-making authority in terms of the Sheriff's Office's treatment of Plaintiff and others with disabilities and ADA policies, who enter or attempt to enter the Fairfield County Court of Common Pleas.

193.    Judge Berens violated Mr. Gordon's due process rights by barring him from the Court and imposing conditions such as muzzling, upon Mr. Gordon, without affording him an opportunity to contest the deprivation in a meaningful time and manner.

194.    In the event Defendants place the blame on Prosecutor Witt for the conditions such as muzzling, imposed upon Mr. Gordon, then Prosecutor Witt failed to provide Mr. Gordon with an opportunity to contest the deprivation in a meaningful time and manner.

195.  The procedures available to defendants did not provide due process of law.

196.  Defendants throughout the entire period relevant to this Complaint, failed to provide Plaintiff Gordon with notice and a meaningful opportunity to be heard on the deprivation of Plaintiffs' rights.

197.  A primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful.

198.  The explanation of the proposed action and of the reasons for the action must be detailed enough to allow for a meaningful hearing

199.  The constitutional notice requirement also requires a direct and clear notice of an appeals process, which Defendants failed to give to Plaintiff Gordon.

200.  Defendants also violated Plaintiffs' due process rights by failing to provide constitutionally sufficient notice of their ability to appeal the barring from the Court, the conditions imposed, and the GAL duties.

201.  Defendants acted under color of law and their actions constituted an arbitrary and unconscionable abuse of government authority.

202.  The discriminatory conduct and actions of Defendants demonstrate a willful and gross disregard for the known rights of Plaintiff Gordon.

203.  Defendants' conduct was intentional or recklessly indifferent.

204.  The Defendants' conduct in violating due process under the Fourteenth Amendment against Plaintiff Gordon, has proximately damaged Plaintiffs in various ways, as described further above in the Fact section, for which the Plaintiffs seek damages to be proven at trial.

205.    As a proximate result of Defendants' illegal and unconstitutional acts as alleged, Plaintiff suffered physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation, and embarrassment, and loss of income.

206.    In addition, because Defendant intentionally discriminated against Plaintiff, he is entitled to reasonable attorneys' fees.

### FOURTH CAUSE OF ACTION
**Fourteenth Amendment - Equal Protection**
**U.S. Constitution**
**42 U.S.C. § 1983**

125.    Each of the preceding paragraphs is hereby incorporated by reference as if fully set forth.

126.    The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," U.S. Const., amend. XIV;

127.    Defendants have intentionally and arbitrarily discriminated against Plaintiff Gordon.

128.    Defendants' have intentionally treated Plaintiff Gordon differently from others similarly situated.

129.    Defendants have no rational basis for barring Plaintiff Gordon from the Courthouse, barring him from performing the GAL duties both in and out of the Court, and placing conditions such as muzzling upon him.

130.    As a proximate result of Defendants' illegal and unconstitutional acts as alleged, Plaintiff suffered physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation, and embarrassment, and loss of income.

131.    In addition, because Defendant intentionally discriminated against Plaintiff, he is entitled to reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION
## 42 U.S.C. § 1983
### *Monell* liability
## 42 U.S.C. § 1983
## Due Process and Equal Protection

132.    Each of the preceding paragraphs is hereby incorporated by reference as if fully set forth.

133.    Plaintiffs set forth this *Monell* causes of action which pertain to the Third and Fourth Causes of Action pertaining to Due Process and Equal Protection violations.

134.    The Defendants directly caused the constitutional violations suffered by Plaintiff, and are liable for the damages caused as a result of the conduct of Judge Vandervoort, Judge Berens, Sheriff Lape, and Prosecutor Witt.

135.    Defendants and Judge Vandervoort, Judge Berens, Sheriff Lape, and Prosecutor Witt are state actors and acted, at all relevant times, under color of state law.

136.    Judge Vandervoort is the policymaker for the Fairfield Court of Common Pleas, Juvenile Division.

137.    Judge Vandervoort is the ultimate decision maker when it comes to whether or not Mr. Gordon is permitted to conduct court-appointed *Guardian Ad Litem* duties both in her Division and during GAL home visits, and is the ultimate decision maker on all administrative matters directly pertaining to the Juvenile Division.

138.    Judge Vandervoort is the official who caused the harm as it pertains to placing conditions such as muzzling upon Mr. Gordon in order for him to be allowed to conduct his GAL duties.

139.    Judge Vandervoort was the final policymaker for the Corporate Defendants as it pertains to barring and/or restricting Mr. Gordon's ability to conduct his GAL duties in the Juvenile Court and in the homes of the clients.

140. Judge Vandervoort has and at all relevant times had final policy making authority over all relevant aspects of operations of the Juvenile Division of the Fairfield County Court of Common Pleas, including but not limited to GAL matters.

141. The due process violation was the result of an official policy or custom of Corporate Defendants, in that Judge Vandervoort, who created the constitutional violations alleged herein, wields final policy making authority.

142. Judge Vandervoort possessed final authority to establish the Corporate policy with respect barring and/or restricting Mr. Gordon's ability to conduct his GAL duties in the Juvenile Court and in the homes of the clients.

143. Judge Vandervoort acted as a final policymaker in the particular area of the Juvenile Division, including the management and administration of the GAL program.

144. Judge Vandervoort has responsibility for the ADA policies and accommodation process for the Fairfield County Court of Common Pleas, Juvenile Division.

125. The conduct of the Judge Vandervoort was a direct consequence of the policies and practices of Corporate Defendants.

126. Judge Vandervoort engaged directly in the discrimination and retaliation against Mr. Gordon and participated in concert with the other Defendants to violate Mr. Gordon's rights as alleged herein.

127. Judge Vandervoort acted under color of law in the acts and omissions described herein.

128. Judge Berens was the final policymaker for the Fairfield Court of Common Pleas as it pertains to whether or not Mr. Gordon could enter into the Fairfield County Court of Common Pleas Court.

129.    Judge Berens was the ultimate decision maker when it comes to whether or not Mr. Gordon could enter the Fairfield County Court of Common Pleas Court.

130.    Judge Berens was the official who caused the harm as it pertains to whether or not Mr. Gordon could enter into the Fairfield County Court of Common Pleas Court.

131.    Judge Berens has and at all relevant times had final policy making authority over all relevant aspects pertaining to whether or not Mr. Gordon could enter into the Fairfield County Court of Common Pleas Court.

132.    The due process and equal protection violations were the result of an official policy or custom of Corporate Defendants, in that Judge Berens, who created the constitutional violations alleged herein, wields final policy making authority.

133.    Judge Berens possessed final authority to establish the Corporate policy with respect to access to the Court.

134.    Judge Berens acted as a final policymaker in the particular area of the access to the Court.

135.    The conduct of the Judge Berens was a direct consequence of the policies and practices of Corporate Defendants.

136.    Judge Berens engaged directly in the discrimination and retaliation against Mr. Gordon and participated in concert with the other Defendants to violate Mr. Gordon's rights as alleged herein.

145.    Judge Vandervoort has responsibility for the ADA policies and accommodation process for the Fairfield County Court of Common Pleas, Juvenile Division.

137.    Judge Berens acted under color of law in the acts and omissions described herein.

138.    In the event Defendants claim Judge Berens was only relying upon the opinions of counsel, then Prosecutor Witt is the policymaker, ultimate decision maker, and official who

caused the harm, as it pertains to whether or not Mr. Gordon could enter the Fairfield County Court of Common Pleas Court.

139.    In the event Defendants claim Judge Berens claims that the Sheriff was the responsible party as to whether Mr. Gordon was authorized to enter the Court, then Sheriff Lape is the policymaker and ultimate decision maker as it pertains to whether or not Mr. Gordon could enter the Fairfield County Court of Common Pleas Court.

140.    In the event Defendants claim Judge Berens was only relying upon the opinions of counsel, then Prosecutor Witt is the policymaker, ultimate decision maker, and official who caused the harm, as it pertains to whether or not Mr. Gordon could enter the Fairfield County Court of Common Pleas Court.

141.    Judge Berens is the final policymaker for the Fairfield Court of Common Pleas as it pertains to the muzzling and other conditions imposed upon Mr. Gordon.

142.    Judge Berens is the ultimate decision maker when it comes to the decision to, and the imposition of the conditions imposed upon Mr. Gordon, such as muzzling, etc.

143.    Judge Berens is the official who caused the harm pertaining to the imposition of the conditions imposed upon Mr. Gordon, such as muzzling, etc.

144.    Judge Berens has and at all relevant times had final policy making authority over all relevant aspects pertaining to conditions imposed upon Mr. Gordon in order for him to participate in the services of the Fairfield County Court of Common Pleas Court.

145.    The due process violation was the result of an official policy or custom of Corporate Defendants, in that Judge Berens, who created the constitutional violations alleged herein, wields final policy making authority.

146.    Judge Berens possessed final authority to establish the Corporate policy with respect to conditions imposed upon Mr. Gordon in order for him to participate in the services of the Fairfield County Court of Common Pleas Court.

147.    Judge Berens acted as a final policymaker in the particular area of the ability of Mr. Gordon to participate in the services of the Court.

148.    The conduct of the Judge Berens was a direct consequence of the policies and practices of Corporate Defendants.

149.    Judge Berens engaged directly in the discrimination and retaliation against Mr. Gordon and participated in concert with the other Defendants to violate Mr. Gordon's rights as alleged herein.

150.    As a proximate result of Defendants' illegal and unconstitutional acts as alleged, Plaintiff suffered physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation, and embarrassment, and loss of income.

151.    In addition, because Defendant intentionally discriminated against Plaintiff, he is entitled to reasonable attorneys' fees.

## SIXTH CAUSE OF ACTION
### Ohio Revised Code Section 4112.01(A)(13) *et seq.*
### Disability Discrimination

207.    Each of the preceding paragraphs is hereby incorporated by reference as if fully set forth.

208.    Plaintiff Gordon is a qualified individual with disabilities as defined under O.R.C. § 4112.01(A)(13) *et seq*.

209.    Defendants intentionally, willfully, and wantonly discriminated against Plaintiff Gordon by denying him the full enjoyment of a place of public accommodation, as defined by O.R.C. § 4112.01(A)(9), due to his disabilities, in violation of O.R.C. §4112.02(G).

210.    As a direct and proximate result of this discriminatory conduct, Plaintiff Gordon has been

damaged, and he is entitled to compensation from Defendant for all damages (actual and/or

punitive) caused by the unlawful discriminatory conduct, pursuant to O.R.C. § 4112.02.

211.    In addition, because Defendant intentionally discriminated against Plaintiff, he is entitled

to reasonable attorneys' fees.

### SEVENTH CAUSE OF ACTION
### Declaratory Judgment

212.    Each of the preceding paragraphs is hereby incorporated by reference as if fully set forth.

213.    There exists real, justiciable controversies between and among the parties that this Court

can finally adjudicate and resolve.

214.    Plaintiff requests a declaration that Plaintiff Gordon has a right to access the Fairfield

County Court without following the conditions such as muzzling his Service Animal and

obtaining insurance for the County.

215.    Plaintiff requests a declaration that Plaintiff Gordon has a right to conduct his GAL duties

with his Service Animal accompanying him, without a muzzle – both in the Courthouse and at

client's homes.

216.    Plaintiff further requests a declaration that Defendants violated Plaintiff Gordon's ADA

and Rehabilitation Acts' rights by failing to accommodate him in a manner which enabled him to

access the Court and conduct his attorney work related to GAL duties, and other duties.

217.    Plaintiff further requests a declaration that Defendants violated Plaintiff Gordon's due

process rights when they prevented him from entering the Court, and then when they required

him to abide by conditions such as muzzling.

218. Plaintiff further requests a declaration that Plaintiff Gordon is entitled to compensatory damages, punitive damages and attorney's fees as a consequence of Defendants violations of 42 U.S.C. Sections 1983 and 1988, and violations of the ADA and Rehabilitation Act, as set forth in the Causes of Action set forth in this Complaint.

## REQUESTS FOR RELIEF

WHEREFORE, the Plaintiff demands judgment against Defendants and requests that the Court enter an Order:

A. Requiring Defendants to grant Plaintiff the equal participation in the benefits, services, programs or activities; and to make them accessible to and usable to Plaintiff to the full extent required by Title II of the ADA;

B. Declaring that the Defendants' policies, procedures and services provided by Defendants are discriminatory and violate the Rehabilitation Act;

C. Requiring the Defendants remove all barriers to the Plaintiff's equal participation in the benefits, services, programs or activities; and to make them accessible to and usable to Plaintiff to the full extent required by the ADA and the Rehabilitation Act.

D. A permanent injunction enjoining the Defendant from engaging in the discriminatory practices complained of herein;

E. A permanent injunction requiring the Defendant to adopt practices and policies in accord and conformity with the requirements of the Americans with Disabilities Act and the Rehabilitation Act, and the Due Process and Equal Protection clauses of the Fourteenth Amendment of the United States Constitution;

F. A permanent injunction requiring the Defendant to allow Plaintiff Gordon access to the Court and its services without the conditions imposed upon him by the Defendants;

G. A permanent injunction requiring the Defendant to allow Plaintiff Gordon to be reappointed to the GAL list and be allowed to perform the duties associated with a GAL – both in and out of the Court, without the conditions imposed upon him by the Defendants.

H. To award compensatory damages in an amount to be determined at trial;

I. To award reasonable attorneys' fees, costs (including expert's fees) and other expenses of suit to the Plaintiff; and

J. To awarding such other relief that the Court deems proper to the Plaintiff.

Respectfully Submitted,

/s/ Michela Huth
MICHELA HUTH
(Reg. No. 0091353)
PO Box 17
Bolivar, OH 44612
Ph: 330-440-4027
Email: michelahuth.esq@gmail.com

**JURY DEMAND**

Plaintiff demands a jury on all claims triable by jury.

/s/ Michela Huth
MICHELA HUTH
(Reg. No. 0091353)