**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**THOMAS GORDON,**

      **Plaintiff,**

                                  **:**

                                             **Case No. 2:25-cv-00466**

  **v.**                                        **Chief Judge Sarah D. Morrison**

                                           **Magistrate Judge Chelsey M.**
                                           **Vascura**

**FAIRFIELD COUNTY,** *et al.*,

                                  **:**

      **Defendants.**

## <u>OPINION AND ORDER</u>

Attorney Thomas Gordon worked as a court-appointed Guardian Ad Litem ("GAL") for the Fairfield County, Ohio Juvenile Court. Mr. Gordon's service dog Xena accompanied him during this work. But after a client's caregiver alleged that Xena bit a child during a home visit, Fairfield County instituted several requirements on Mr. Gordon's ability to bring Xena into the courthouse or to client meetings. Soon after, Mr. Gordon removed his name from the GAL list and he told the Court that he would no longer appear in pending cases. He also filed this suit against the Fairfield County Commissioners, asserting that the requirements imposed on his use of Xena were discriminatory and violated his Constitutional rights.[1] (Compl., ECF No. 1.) The County answered (Answer, ECF No. 14) and filed

---

[1] Mr. Gordon also named Fairfield County, the Fairfield County Court of Common Pleas, and the Fairfield County Sheriff's Office as Defendants. (*See* Compl.) He has since agreed to dismiss his claims against those entities, conceding that unchartered counties, county courts, and county sheriff offices are not subject

a Motion for Judgment on the Pleadings (Mot., ECF No. 17). That Motion is fully briefed and, for the reasons below, is **GRANTED in part** and **DENIED in part**.

## I.     MR. GORDON'S ALLEGATIONS

All well-pleaded factual allegations in the Complaint are accepted as true for purposes of the pending motion. *See Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008).

Mr. Gordon has epilepsy and he uses Xena to stop seizures through stimulation and to provide comfort until the seizure passes. (*Id.*, ¶¶ 28–29.) She accompanies Mr. Gordon all the time, including when he was performing GAL work. (*Id.*, ¶¶ 30–32.)

In January 2023, Mr. Gordon brought Xena with him to visit two minor clients for whom he had been appointed GAL. (*Id.*, ¶ 75.) During the visit, the clients' caregiver (their grandmother) accused Xena of biting another child in the home. (*Id.*, ¶ 83.) Mr. Gordon denies that Xena injured the child. (*Id.*, ¶¶ 82–86.) Still, the caregiver reported the incident to Fairfield County in May 2023. (*See* ECF No. 14-3, PAGEID # 126.)

Thereafter, Fairfield County Deputy Sheriffs prevented him from bringing Xena through courthouse security. (Compl., ¶¶ 33, 72.) The first time they stopped Xena, the Deputies provided no explanation for refusing to allow the dog through

---

to suit except through a county board of commissioners. (Resp., PAGEID # 185.) Mr. Gordon's claims against those Defendants are thus **DISMISSED**. For ease of reference, the Court refers to the Fairfield County Commissioners as "Fairfield County" or the "County."

security; Mr. Gordon left Xena with a colleague to attend a hearing set for that day. (*Id.*, ¶¶ 32–36.) The next day, Deputies again refused to admit Xena and told Mr. Gordon that she would not be allowed in the building without a muzzle. (*Id.*, ¶ 37–38.) Unable to enter without Xena, Mr. Gordon appeared for a hearing by telephone from the courthouse lobby. (*Id.*, ¶ 43.)

Mr. Gordon then generally muzzled Xena when passing through security but he would often remove the muzzle after clearing security. (*Id.*, ¶¶ 56, 65, 69–71.) At the time, he was not concerned about getting caught violating the rules because he was going to let Juvenile Administrative Judge Terre L. Vandevoort know that he would not continue to work in the Juvenile Division. (*Id.*, ¶ 68.) A few weeks after he was first required to muzzle Xena, he decided to remove himself from the court appointment list. (*Id.*, ¶ 64.)

Meanwhile, the Fairfield County Court investigated the May 2023 complaint. On August 25, 2023, Judge Vandervoort sent Mr. Gordon a letter advising him that the investigation was inconclusive. Still, she expressed concern with the allegation that he failed to maintain control of his dog while on a home visit. (ECF No. 14-2; *see also* Compl., ¶¶ 88–89.) Judge Vandervoort asked Mr. Gordon to provide information about Xena's service animal training, and told him that he could not take Xena on any home visits unless he complied with all the following:

      a. Provide proof that the dog is covered under your homeowner's insurance;
      b. Provide proof that Fairfield County has been named as additional insured on that insurance;
      c. The dog must be muzzled anytime taken into a home for a visit, and;

3

      d. The dog must be muzzled the entire time it is in the Hall of Justice.

(ECF No. 14-2, *see also* Compl., ¶ 90.) These requirements were effective immediately. (ECF No. 14-2.)

Mr. Gordon responded to Judge Vandervoort the next day that he disputed the allegations about Xena. He said that the complaint had consumed his time and attention, and that he preferred to spend his energy on more worthwhile endeavors. (ECF No. 14-4; *see also* Compl., ¶ 91.) He also explained that he could not comply with the Court's requirements because (a) muzzling Xena would prevent her from assisting him during a seizure and (b) he could not obtain the requested insurance information that quickly. (ECF No. 14-4; *see also* Compl., ¶ 91.) He ended his letter by requesting immediate removal from the GAL list and said that he would not attend future hearings as a court-appointed GAL. (ECF No. 14-4; *see also* Compl., ¶ 92.)

The next month, Mr. Gordon's counsel sent a letter to Fairfield County officials contending that the requirements prevented him from working as an attorney and GAL and constituted illegal disability discrimination. (ECF No. 23-1.) Mr. Gordon demanded an immediate retraction of the requirements. When the County did not meet his demand, he filed this suit, asserting seven claims:

- <u>Count I:</u> Failure to Accommodate (Title II of the Americans with Disabilities Act)

- <u>Count II:</u> Failure to Accommodate (Rehabilitation Act § 504)

- <u>Count III:</u> Due Process (42 U.S.C. § 1983)

4

- Count IV: Equal Protection (42 U.S.C. § 1983)

- Count V: Municipal Liability (42 U.S.C. § 1983)

- Count VI: Disability Discrimination (Ohio Rev. Code § 4112.02(G))

- Count VII: Declaratory Judgment

The County moves for judgment on all claims.

## II.    STANDARD OF REVIEW

A motion for judgment on the pleadings made under Federal Rule of Civil Procedure 12(c) is analyzed in the same manner as a motion to dismiss under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). To overcome such a motion,

> a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly,* 550 U.S. at 555.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A motion for judgment on the pleadings should be granted when there is no material issue of fact, and the moving party is entitled to judgment as a matter of law. *Tucker*, 539 F.3d at 549.

## III.   ANALYSIS

### A.     Failure-to-Accommodate (Counts I and II)

In Counts I and II, Mr. Gordon alleges that the County violated Title II of the ADA and Section 504 of the Rehabilitation Act by failing to accommodate his disability. Both statutes prohibit covered entities from discriminating against an individual by reason of their disability. 42 U.S.C. § 12132; 29 U.S.C. § 794. Because the statutes are analytically similar, the Court will evaluate Counts I and II together.[2] *See M.G. ex rel. C.G. v. Williamson Cnty. Schs.*, 720 F. App'x 280, 287 (6th Cir. 2018) ("Claims brought under the ADA and Section 504 generally are evaluated together.").

To succeed on a disability discrimination claim, a plaintiff must demonstrate that (1) he has a qualifying disability; (2) he is otherwise qualified for a program or benefit of the entity; and (3) he was excluded from participation in, denied the benefits of, or subjected to discrimination under a program because of his disability. *Finley v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024). A plaintiff may satisfy the third element by demonstrating that the defendant "reasonably could have accommodated his disability but refused to do so" and that such failure "impeded

---

[2] Fairfield County argues that a failure-to-accommodate claim under the Rehabilitation Act requires a plaintiff to demonstrate that the discrimination occurred "solely" because of his disability. (Mot., PAGEID # 161–62.) Not so. While the Rehabilitation Act imposes a stricter causation standard than the ADA for intentional discrimination claims, courts consistently apply the same standard to failure-to-accommodate claims under the ADA and the Rehabilitation Act, which requires no evidence of discriminatory intent. *See Finley v. Huss*, 102 F.4th 789, 820–21 (6th Cir. 2024) (collecting cases).

his ability to participate in or benefit from a program or service." *Id.* (citation omitted). What constitutes a "reasonable" accommodation is "highly fact-specific, requiring case-by-case inquiry." *Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 326 (6th Cir. 2023) (citation omitted).

The County does not dispute that Mr. Gordon has adequately alleged facts establishing the first and second elements of his failure-to-accommodate claims. It argues instead that he failed to allege that the requirements were placed on him because of his disability. It argues the requirements placed on his use of Xena were reasonable because (1) Mr. Gordon had failed to control Xena and (2) Xena posed a direct threat to public safety.

In support of its contention that Mr. Gordon did not control Xena, Fairfield County cites the Department of Justice's regulations implementing the ADA, which provide an exception to the general presumption of admitting service animals when the animal is "out of control" and the handler "does not take effective action to control it." 28 C.F.R. § 35.136(b)(1). The County then argues that Mr. Gordon failed to control Xena when he allowed children to pet her in a "precarious scenario," creating a "dangerous" environment that caused injury to a child. (Mot., PAGEID # 156–57.) As further evidence of that lack of control, the County points to Mr. Gordon's statements that he (1) once "handed his animal off to a colleague" before entering the courthouse and (2) failed to comply with the muzzling requirement by "letting the muzzle 'hang' around her neck without it being properly fastened." (*Id.*, PAGEID # 157.)

7

Fairfield County's arguments ask this Court to ignore its obligations under Rule 12(c) to accept all factual allegations as true and make all reasonable inferences in Mr. Gordon's favor. Mr. Gordon indeed alleges that he allowed children to pet Xena, left Xena with a colleague, and removed her muzzle after passing through security. Fairfield County concludes that such behavior shows Xena was out of control, even though such conclusion is not apparent on the face of the Complaint. In so doing, the County makes a negative inference regarding the sum of these facts. The Court will not, and cannot, do the same.

As to Fairfield County's second contention, a public entity may impose legitimate safety requirements on the use of a service animal if the animal poses a "direct threat" to the health and safety of others. *Bennett*, 86 F.4th at 327 (citing 28 C.F.R. § 35.139(a)). When assessing whether a service animal poses a direct threat, courts evaluate three factors: (1) the nature, duration, and severity of the risk; (2) the probability that the potential injury will actually occur; and (3) whether reasonable modifications will mitigate the risk. *Id*. at 327–28. A direct threat determination must be "based on actual risks, not on mere speculation." *Id*. at 329 (citing 28 C.F.R. § 35.130(h)).

Fairfield County does not address the nature of the risk that Xena posed or the probability of injury to someone if Xena was unmuzzled. The County assumes a direct threat defense applies, but it does not show its entitlement to that defense. But even if the County had presented an exacting analysis of a direct threat defense, the Court must accept the allegations in the Complaint as true. According

to Mr. Gordon, Xena posed almost *no* risk of injury to others – she did not bite or injure any child and there is no allegation that she is likely to injure someone.

Fairfield County's Motion is **DENIED** on Counts I and II.

## B.       § 1983 Claims

Mr. Gordon asserts three constitutional claims using 42 U.S.C. § 1983. To state a claim for relief under § 1983, a plaintiff must allege (1) a violation of a right secured by the federal Constitution or laws and (2) the violation was committed by a person acting under color of state law. *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010).

### 1.       Due Process (Count III)

Mr. Gordon's third claim alleges the County violated his due process rights under the Fourteenth Amendment. The Court construes this claim as a procedural due process claim.[3]

A procedural due process claim requires a plaintiff to identify a deprivation of a life, liberty, or property interest protected by the Due Process Clause and show that the state did not afford him adequate procedural rights for the deprivation. *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). "Only after a plaintiff has met the burden of demonstrating that he possessed a protected property or liberty interest and was deprived of that interest will the court consider whether the process provided the plaintiff in conjunction with that deprivation, or

---

[3] Fairfield County also characterizes this claim as a procedural due process claim in its Motion, which Mr. Gordon does not contest. (Mot., PAGEID # 149–150.)

9

lack thereof, violated his due process." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005) (citing *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002)).

Mr. Gordon alleges that he was deprived of his liberty and property interest in being able to access the Court and to work as an attorney and as a GAL. (Resp., PAGEID # 191; Compl. ¶ 183.) Assuming that Mr. Gordon has such protected interests, the facts alleged do not demonstrate that Fairfield County deprived him of these rights.

First, with regard to his ability to enter the courthouse, "[c]ourts have typically addressed actual, not constructive, deprivations of protected interests." *Larkin v. Town of West Hartford*, 891 F. Supp 719, 728 (D. Conn. 1995). Mr. Gordon alleges two specific instances when courthouse security would not let him in the building with Xena. But, in both instances, Mr. Gordon was able to attend his scheduled hearings—once by leaving Xena with a colleague and once appearing by phone. And as to the latter, he does not allege that he could not continue to work as an attorney and GAL and attend hearings by phone in the future. In other words, any restriction placed on Mr. Gordon's ability to enter the courthouse did not impede his underlying interest in accessing the Court.

As to Mr. Gordon's general ability to work as an attorney and GAL, the "Due Process Clause encompasses the liberty to pursue one's trade, profession or calling, but does not grant the right to a specific job." *Bower v. Village of Mount Sterling*, 44 F. App'x 670, 674–75 (6th Cir. 2002). For a plaintiff to be deprived of his ability to work in his chosen profession, he must "plead state action that precluded him from

10

engaging in his profession anywhere in the state." *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 585 (6th Cir. 2021). Alternatively, a plaintiff may have a property interest in continued employment based on "rules or mutually explicit understandings." *Id*. at 577. In such cases, a "constructive discharge may constitute a deprivation of property within the meaning of the Fourteenth Amendment." *Nunn v. Lynch*, 113 F. App'x 55, 59 (6th Cir. 2004). A constructive discharge requires a plaintiff to show that the defendant forced him to resign involuntarily. *Rhoads v. Bd. of Educ. of Mad River Loc. Sch. Dist.*, 103 F. App'x 888, 894 (6th Cir. 2004). "However, if a plaintiff resigns of [his] own free will, even as a result of the defendant's actions, then [he] voluntarily relinquishes a property interest in continued employment, and the defendant cannot be found to have deprived [him] of that interest without due process of law." *Id*. A resignation is involuntary if "an objectively reasonable person would, under the totality of the circumstance, feel compelled to resign if he were in the [plaintiff's] position." *Id*. at 895.

Mr. Gordon has not alleged that the requirements prevented him from working as an attorney/GAL outside of Fairfield County.[4] Likewise, the allegations

---

[4] Mr. Gordon alleges that the requirements prevented him from "completing his duties" as a GAL and therefore "jeopardized his law license" because he could not investigate and visit children at home. (Compl., ¶¶ 105–07.) To support this contention, Mr. Gordon cites Rule 48 of the Ohio Rules of Superintendence (*Id.*, ¶ 107), of which the Court make take judicial notice. *Wyser-Pratte Mgmt. Co., Inc. v. Texlon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) ("In addition to the allegations in the complaint, the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice."). But Rule 48 does not require a GAL to conduct interviews and home visits in person. Ohio Sup. R. 48.03(D). Mr. Gordon speculates that the requirements

11

do not suggest that his resignation from the court-appointed GAL list was involuntary, or that the requirements were so onerous that a reasonable person would feel compelled to resign. Mr. Gordon did not attempt to negotiate with the County or propose alternative arrangements that would allow him to continue performing court-appointed work with Xena. Rather, he decided that dealing with the County's investigation and resulting decision was consuming too much time and attention, and he preferred to spend it on more worthwhile endeavors. (*See* ECF No. 14-4, PAGEID # 129.) And although he removed himself from the court-appointed GAL list one day after the County imposed additional requirements on his use of Xena, he also alleges that he had decided to remove himself from that list weeks earlier. Thus, even construed in the light most favorable to Mr. Gordon, the allegations do not support a reasonable inference that his withdrawal from the court-appointed GAL list was involuntary.

Without allegations that Fairfield County deprived Mr. Gordon of a protected property or liberty interest, his due process claim fails as a matter of law. Fairfield County's Motion is **GRANTED** on Count III.

---

might, in the future, cause him to be disciplined, but he does not allege any credible threat of discipline to ground this hypothetical result. Likewise, he does not allege that were no alternative accommodations to complete his GAL duties. Concluding that the requirements jeopardized his law license is an unwarranted factual inference that is not accepted as true for purposes of the County's Motion. *See Diei v. Boyd*, 116 F.4th 637, 645 (6th Cir. 2024).

12

### 2.     Equal Protection (Count IV)

To sustain an equal protection claim, a plaintiff must allege that the government made a distinction that burdened a fundamental right, targeted a suspect class, or intentionally treated the plaintiff differently from others similarly situated without any rational basis for the difference. *Doe v. Miami Univ.*, 882 F.3d 579, 595 (6th Cir. 2018). Mr. Gordon asserts a "class of one" claim,[5] so he must identify similarly situated individuals who were not subject to the alleged mistreatment. *See Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). Class-of-one plaintiffs face an "uphill climb," because such claims are subject to rational-basis review. As a result, government action is presumptively valid and will be upheld if there is any rational relationship between the alleged mistreatment and a legitimate government purpose. *In re City of Detroit, Mich.*, 841 F.3d 684, 701 (6th Cir. 2016) (citing *Heller v. Doe*, 509 U.S. 312, 320 (1993)).

Fairfield County argues it is entitled to judgment on Mr. Gordon's equal protection claim for two reasons: first, the Complaint does not identify any similarly situated individual it treated differently; and second, the Complaint does not allege facts suggesting the requirements placed on Mr. Gordon's use of Xena were rooted in discriminatory animus.

---

[5] Mr. Gordon also argues that his equal protection claim is based on his membership in the class of disabled individuals. (ECF No. 23, PAGE # 200.) Disability, however, is not a suspect class for the purposes of an equal protection claim. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 441–42 (1985).

13

As to the first argument, Mr. Gordon responds that the County treated him differently than non-disabled individuals. But the fact that the County imposed requirements on Mr. Gordon and his service dog does not, on its own, demonstrate it treated him differently within the meaning of the Equal Protection Clause. *Cf. Bullington v. Bedford Cnty., Tenn.*, 905 F.3d 467, 477–78 (6th Cir. 2018) (the rights and protections of the ADA and the Equal Protection Clause "differ significantly," as, unlike an ADA claim, an equal protection claim requires a plaintiff to show disparate treatment with no rational basis for the difference). For his equal protection claim to survive, Mr. Gordon must point to a similarly situated individual whom Fairfield County treated differently. Mr. Gordon failed to do so.

As to the second argument, Mr. Gordon failed to allege facts to support an inference that Fairfield County treated him differently *because of* his disability. The County can impose "requirements which do not make allowance for the disabled" so long as there is some legitimate rational basis for the requirements. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367–68 (2001). To establish a lack of rational basis, a plaintiff must either (1) negate every conceivable basis which might support the government's action or (2) demonstrate that the challenged government action was motivated by animus or ill-will. *Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005). By his own account, Fairfield County imposed requirements on his use of Xena because of a complaint that Xena bit a child. While Mr. Gordon disputes that Xena bit anyone and the wisdom of the County's requirements, he does not dispute that the guardian's complaint guided the

14

decision. Thus, the allegations in the complaint provide a conceivable basis that would support the County's actions here.

Mr. Gordon's Complaint also fails to allege that the County was motivated by animus or ill-will.

Accordingly, Mr. Gordon's equal protection claim fails as a matter of law. Fairfield County's Motion is **GRANTED** on Count IV.

### 3. *Monell* Liability (Count V)

Mr. Gordon's final § 1983 claim is asserted under a theory of *Monell* liability. A plaintiff seeking to impose liability on a local government under § 1983 must identify a policy or custom of the county that caused the plaintiff's injuries. Liability will be found only upon a showing of an underlying constitutional violation by the county's officials. *See M.J. by & through S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 452 (6th Cir. 2021).

Because Mr. Gordon's due process and equal protection claims fail as a matter of law, so too does his *Monell* claim. Fairfield County's Motion is **GRANTED** on Count V.

### C. State Law Disability Claim (Count VI)

Fairfield County argues that Ohio's Political Subdivision Tort Liability Act affords it statutory immunity on Mr. Gordon's public accommodation disability discrimination claim under Ohio Rev. Code § 4112.02(G). The Court agrees.

Ohio's Political Subdivision Tort Liability Act provides that political subdivisions, such as a county government, are immune from civil damages actions for injury, death, or loss to person or property. Ohio Rev. Code § 2744.02(A)(1). This

immunity applies to claims for discrimination under Ohio Rev. Code § 4112.02(G). *W.H. v. Akron City Sch. Dist. Bd. of Educ.*, 264 N.E.3d 878, 887 (Ohio Ct. App. 2025).

There are five exceptions to this statutory immunity. The first four exceptions (which involve roads, defective buildings, the operation of a motor vehicle, and the negligent performance of "proprietary functions") plainly do not apply here. *See* Ohio Rev. Code § 2744.02(B). The fifth is a catchall exception for when political subdivision liability is expressly imposed under Ohio law. *See* Ohio Rev. Code Ann. § 2744.02(B)(5). This exception, too, is inapplicable to Mr. Gordon's claim because the statutory provision providing for damages for violations of § 4112.02(G) does not expressly reference political subdivisions. Ohio Rev. Code § 4112.99; *see also Howard v. City of Beavercreek*, 276 F.3d 802, 807–08 (6th Cir. 2002) (finding municipality was entitled to immunity for claims for damages for violations of § 4112.02(G)).

Thus, Fairfield County is entitled to statutory immunity under Ohio Rev. Code § 2744.02(A) for Mr. Gordon's state law claim. Fairfield County's Motion is **GRANTED** on Count VI.

### D.   Declaratory Judgment (Count VII)

The Declaratory Judgment Act is a procedural mechanism that creates a remedy for a preexisting right enforceable in federal court, regardless of whether further relief is or could be sought. 28 U.S.C. § 2201; *see also Fire-Dex, LLC v. Admiral Ins. Co.*, 139 F.4th 519, 528 (6th Cir. 2025). The Act does not create an independent cause of action; courts may only declare rights and other legal relations

16

of interested parties based on an actual controversy and some other underlying substantive right. *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007). A claim for declaratory relief is thus concomitant to a party's substantive claims.

Fairfield County argues it is entitled to judgment on Mr. Gordon's declaratory judgment claim because it is entirely subsumed within his other claims and is duplicative. But this redundancy does not automatically bar his declaratory judgment claim. *See Lion Fed. Credit Union v. Worldpay*, LLC, 1:24-cv-163, 2024 WL 1704551, at *12 (S.D. Ohio Apr. 19, 2024) (Cole, J.) (collecting cases). The declaratory judgment claim does, however, rise or fall with his other claims.

Because Fairfield County is entitled to judgment on Mr. Gordon's § 1983 claims, it is also entitled to judgment on his request for declaratory relief to the extent the request relates to those claims. Conversely, Mr. Gordon has adequately pleaded claims for failure to accommodate under the ADA and Rehabilitation Act, so his request for declaratory judgment may proceed to the extent it relies on those claims.

Fairfield County's Motion is **GRANTED** on Count VII to the extent the claim relies on his § 1983 claims. Fairfield County's Motion is otherwise **DENIED** on Count VII.

## IV.   CONCLUSION

For the reasons stated herein, Fairfield County's Motion for Judgment on the Pleadings is **GRANTED** on Counts III, IV, V and VI, and on Count VII to the extent it requests declaratory judgment related to Mr. Gordon's § 1983 claims. The

17

Motion is **DENIED** on Counts I and II, and on Count VII to the extent it requests declaratory judgment related to his claims under the ADA and Rehabilitation Act.

    **IT IS SO ORDERED.**

                    /s/ Sarah D. Morrison         
                    **SARAH D. MORRISON, CHIEF JUDGE**
                    **UNITED STATES DISTRICT COURT**